### NOBLE CANEDY *vs.* WILLIAM HASKINS.

A testator made the following devise in 1775: "I give to my brother W.'s son N., during his natural life, (after the decease of my wife,) and to his eldest male heir, and after his decease and to said male heirs and assigns forever, all and singular, my homestead," &c.: At the time of making the devise, N. had no issue; but he afterwards had several children, of whom the third son alone survived him. *Held,* that N. took a life estate only, and that, at his decease, his surviving son took an estate in tail male.

THIS was a writ of entry, and the case was submitted to the court upon the following statement of facts:

Barnabas Canedy, on the 31st of March 1775, being then seized of the demanded premises, and other lands and tenements, after giving to his wife the use and improvement of all his real estate during her life, devised, among other things, as follows: "Item. I give, grant and convey unto my brother William Canedy's son, Noble Canedy, during his natural life, (that is, after the decease of my said wife Elizabeth Canedy,) and at his decease to his eldest male heir, and after his decease and to said male heirs and assigns forever, all and singular, my homestead in Taunton and Middleborough, with all my houses, barns, out-houses and orchards on said lands, and part of a cedar swamp, known by the name of John Thrasher's cedar swamp, more or less. Likewise all the rights I own in the eleventh lot in Assonet cedar swamp, (provided he, the said Noble Canedy, pay the sums hereafter mentioned,) and one half of my wearing apparel." The will, in which the above devise was made, was proved and allowed on the 30th of July 1776; and the demanded premises are a part of the said John Thrasher's cedar swamp.

The demandant claims the demanded premises, as eldest male heir of Noble Canedy mentioned in said will, and it is agreed that he was the only male child that survived the said devisee, Noble Canedy. Said devisee went into possession of the estate devised to him, as aforesaid, after the death of said Elizabeth, (who survived the said Barnabas, the testator, and died a few years after his decease,) and continued to

33 *

hold the demanded premises, until he conveyed the same, as hereinafter mentioned, and died in the year 1840.

Said Noble, the devisee, had seven children, who were all born after the decease of the testator. Two sons, the eldest born and the youngest, died in infancy. Three children survived him, viz. the demandant and two daughters of full age at his decease. Barnabas, the second son, (the demandant being the third,) died in 1815, of full age, but unmarried and without issue. Said Noble, the devisee, also left a grandson and great grandson, the legal representatives of a deceased daughter.

On the 25th of May 1810, said Noble, the devisee named in said will, by deed of that date, for a valuable consideration, and *bona fide*, attested by two credible witnesses, and duly acknowledged and recorded, conveyed the demanded premises to his said son Barnabas, and his son in l...v James P. Reed; both said grantees being then of full age. On the 15th of October 1810, the said Barnabas and James P., by their deed of that date, for a valuable consideration, and *bona fide*, and duly attested by two credible witnesses, and duly acknowledged and recorded, conveyed the same to the tenant.

It was agreed that if, on these facts, the court should be of opinion that the demandant is entitled to recover the demanded premises, the tenant should be defaulted, and judgment be entered for the demandant; otherwise, that the demandant should become nonsuit.

*Eddy*, for the demandant. No son of the devisee survived him, except the demandant. The eldest son died in infancy, and one older than the demandant lived to be of full age, but died 25 years before the devisee. As the devisee had no issue when the will was made, it is manifest that the testator, by the words "male heir," intended the eldest of the devisee's issue male, if any, who should be alive at the devisee's decease, and not any issue which should be born and die while he held the life estate. It is also clear that Noble Canedy, the express devisee for life, took an estate for life only; and there is no rule of law by which it can be changed into an

estate in tail or in fee. Therefore the deed, which he˙made to his son Barnabas, and to his son in law Reed, conveyed an estate for his life only, and is no bar to the claim of the demandant. It is as clear that the demandant has an estate tail in the demanded premises, or an estate in fee, and that the remainder, as claimed by the demandant, is a good contingent remainder. See Fearne, 9, 340. *Archer's case,* 1 Co. 66, and 1 And. 37. *Ginger* v. *White,* and *Goodtitle* v. *Wodhull,* Willes, 348, 592. *Tyte* v. *Willis,* Cas. Temp. Talb. 1. *Doe* v. *Laming,* 2 Bur. 1100. Co. Lit. 8 *b.* Hargrave's note.

The rule in *Shelley's case,* 1 Co. 93 *b.* (though it was in force here when this will was made) does not apply to the present case. *First.* Because the limitation after Noble Canedy's decease is not to his heirs, either general or special, but to one of them, that is, the eldest male; and even if the plural word had been used, the rule would not have applied, if the testator did not use it in a legal sense. Cruise's Dig. tit. 38, c. 10, §§ 31 – 42. *Jones* v. *Morgan,* 1 Bro. C. C. 206. *Doe* v. *Laming,* 2 Bur. 1100. **Bagshaw** v. *Spencer,* 1 Ves. sen. 142, and Belt's note. *Sisson* v. *Seabury,* 1 Sumner, 251, 257, and cases there cited. *Second.* Because further words of limitation, superadded to the word "heir," indicate an intent to use the word in a restricted sense, as *designatio personæ.* 1 Co. 66. 2 Bur. 1110. *Richardson* v. *Wheatland,* 7 Met. 175. Now there are, in the case at bar, such words of limitation superadded to the devise to Noble's eldest male heir, viz. "to said male heirs and assigns for ever;" which is a sufficient indication of an intent that the eldest male heir should take by purchase, as a new stock of descent. *Bennett* v. *Morris,* 5 Rawle, 9. *Dunwoodie* v. *Reed,* 3 S. & R. 435. *Osborne* v. *Shrieve,* 3 Mason, 391. 1 Hargrave's Law Tracts, 575 – 577. 1 Preston on Estates, 369. 4 Kent Com. (5th ed.) 221. 7 Met. *ubi sup.*

Though there is a son of Noble Kennedy's daughter still living, yet there can be no pretence that he is the male heir contemplated by the devisor. He who takes the remainder must be both heir and heir male, and the son of a daughter

who is heir shall not take. *Durdant* v. *Burchet,* Skin. 205.

*W. Baylies,* for the tenant. Noble Canedy, the devisee, took an estate tail, by force of that maxim of the common law, called the rule in *Shelley's case,* viz. that where an estate of freehold is limited to a person, and the same instrument contains a limitation, either mediate or immediate, to his heirs, or the heirs of his body, the word 'heirs' is a word of limitation ; that is, the ancestor takes the whole estate comprised in this term. Thus, if the limitation be to the heirs of his body, he takes a fee tail ; if to his heirs general, a fee simple. 2 Jarman on Wills, (1st Amer. ed.) 241 *b.* 4 Kent Com. (1st ed.) 206, 207. 1 Preston on Estates, 263. Though attempts have been made, from time to time, to break in upon this rule, yet it has been firmly established, by numerous decisions, as an axiom of the English law of real property, and was a part of the law of Massachusetts, at the time of the death of Barnabas Canedy, the testator, and for a long time after, and must govern this case, if the case be brought within it.

The devise is to Noble Canedy, during his natural life, and at his decease to his eldest male heir. The law supplies the words " of his body," if necessary to effectuate the intention of the testator. The words 'male heir,' or 'male heirs,' in a will, mean male heir or male heirs of the body. *Denn* v. *Slater,* 5 T. R. 335. 4 Dane Ab. 626. 1 Roberts on Wills, 538.

The circumstance on which much stress has been laid, by the demandant's counsel, viz. that the devise is to Noble Canedy, *expressly* during his natural life, cannot, of itself, have any influence to change or affect the character of the devise. He had a freehold estate, by the express terms of the will, and that is all which the rule in *Shelley's case* requires. *Coulson* v. *Coulson,* 2 Stra. 1125. *Robinson* v. *Robinson,* 1 Bur. 38. *Doe* v. *Cooper,* 1 East, 229. *Perrin* v. *Blake,* 4 Bur. 2579. *Doe* v. *Applin,* 4 T. R 82. *Dubber* v *Trollope,* 2 Preston on Estates, 538. In al these cases, there

was no express limitation of the estate to the first taker for life; and in three of them there were negative words. Yet it was held that he took an estate tail, by force of the other terms of the devise. And an examination of all the decisions on this point will result in the conclusion so strongly stated in 2 Jarman on Wills, 246; namely, "that words, however positive and unequivocal, expressly negativing the continuance of the ancestor's estate beyond the period of its primary express limitation, will not exclude the rule."

The next question is, whether the words "eldest male heir" are words of limitation or of purchase. And if they are words of limitation, and not words of purchase, in their ordinary and technical import, the further question arises, whether they are made words of purchase by subsequent words of superaddition. These questions reach the essential and vital parts of the case.

The words " heir," " heir male," " heir of the body," notwithstanding the prefix " first," " next," or " eldest," are, in their proper technical import, words of limitation, and not of purchase, and are never to be taken as words of purchase, unless to answer the intent of the testator, so plainly and clearly expressed and manifested, that nobody can misunderstand it. This proposition is sustained by numerous decisions; but an extended citation of them is not necessary. In 2 Jarman on Wills, 233, 234, the law is thus stated : " It is clear that the words 'heir of the body' (in the singular) operate as words of limitation, and consequently confer an estate tail. Nor is the effect varied by the word 'next' or 'first' being prefixed to the word 'heir.'" Powell on Devises, (1st ed.) 361 – 363, is also very full on this point. These authorities, with those hereafter to be cited under this head, establish the following points : (1.) A devise to a man and his " first heir male," in the singular number, can have no other effect than a devise to a man and his " heir male," in the singular number. (2.) A devise to a man and his "heir male," will have the same effect as a devise to a man and his " heirs male." (3.) An express estate for life, devised,

will be of as little consequence in the one case as in the other. *Dubber* v. *Trollope*, 2 Preston on Estates, 538. *Goodright* v. *Pullyn*, 2 Ld. Raym. 1437. *Burley's case*, cited by Lord Hale, in 1 Vent. 230. *Denn* v. *Slater*, 5 T. R. 337. Com. Dig. Estates by Devise, N. 5. 4 Dane Ab. 630. It is true that Lord Coke says, (Co. Lit. 8 *b.*) " if a man give land to a man **and** to his heir in the singular number, he hath but an estate for life ; for his heir cannot take a fee simple by descent, because he is but one ; and therefore, in that case, his heir shall take nothing." But Mr. Hargrave, in his note on this *dictum*, says, " according to many authorities, heir may be *nomen collectivum* as well in a deed as a will, and operate in both in the same manner as heirs in the plural number." And this opinion of Lord Coke seems to have but little foundation in the text of Littleton, as is shown by C. J. Eyre, in *Dubber* v. *Trollope*, 2 Preston on Estates, 542. But if this opinion or *dictum* were correct, it is not perceived how, taken all together, it could operate in favor of the present demandant.

It thus appears that the words of the devise " to Noble Canedy, during his natural life, and at his decease to his eldest male heir," in their proper technical import, conferred on Noble Canedy, the devisee in the will, an estate tail. Are the superadded words sufficient and powerful enough to convert these words of limitation into words of purchase, and cut down an estate tail to a life estate ? To effect this change, it is necessary (as already stated) that the superadded words should show clearly, and beyond all doubt, that such was the intent of the testator. *Poole* v. *Poole*, 3 Bos. & Pul. 627. *Jesson* v. *Wright*, 2 Bligh, 1. 2 Jarman on Wills, 280, 305. This doctrine was recognized by Story, J. in *Sisson* v. *Seabury*, 1 Sumner, 257.

In commenting on a few of the cases cited for the demandant, it is to be kept in mind that the words ' child,' ' children,' ' son,' or ' sons,' are not equivalent to the word ' heir ' or ' heirs.' They are not, according to their technical and legal import, *prima facie*, words of limitation, like the word ' heir ' or ' heirs,' though they may be made so, by plain and

unequivocal evidence. This distinguishes the present case from that of *Sisson* v. *Seabury*, and from several other cases cited on the other side.

The case of *Doe* v. *Laming*, 2 Bur. 1110, is examined by Mr. Jarman, who concludes his comment by saying, "we may then reasonably hope never to hear that case again cited as an authority in a court of law." 2 Jarman on Wills, 288. Yet this is the case which Story, J. refers to, in emphatic terms, as fully sustaining his decision in the case of *Sisson* v. *Seabury*.

The judgment of the court of King's Bench, in *Perrin* v. *Blake*, 4 Bur. 2579, was reversed in the Exchequer Chamber. Lord Brougham, in speaking of the decision of the King's Bench, in that case, says, "that it was erroneous, no lawyer can doubt."

*Archer's case*, 1 Co. 66, contains the strength and substance of most of the cases cited for the demandant. It is, in fact, a compendium of the material points upon which the demandant's case is put. In that case, there was a devise to the father for life, and after to his next heir male, and to the heirs male of the body of such next heir male; and it was agreed by the court that this was a contingent remainder to the heir, and that the father was but tenant for life; and he having made a feoffment of the devised land, it was held that such contingent remainder was destroyed. The true ground of this decision seems to be, that the superadded words, or subsequent limitation, "to the heirs male of such heir male" (confining the succession to the next heir male and his line exclusively) necessarily implied that the testator used the words "next heir male" as words of purchase, and not of limitation. And so far, it may be that *Archer's case* is an authority in a case under similar circumstances. But the words of superaddition, in the devise to Noble Canedy, are very different, viz. "and after his decease and to said male heirs and assigns forever." Do these words, "after his decease," refer to "his eldest male heir," or are they tautological

— a mere repetition — and so refer to Noble Canedy? And whose heirs are " said male heirs " ? The word " heirs " had not been used before. The words are not to the heirs male of the body of said eldest male heir, nor to *his* male heirs. And it will require an unreasonable latitude to give the words of this testator the same construction which the words in *Archer's case* received. If these words, " said male heirs " have reference to the words " said male heir," the reference was made to them, by the testator, as *nomen collectivum;* he having used them as such, and meaning no more, by the words " eldest male heir," and " said male heirs," than to point out the order of succession which the law itself had prescribed, and not intending to restrain and limit the devise to his eldest son and *his* male heirs. And to infer such intent from obscure and ambiguous words, and phrases of uncertain and doubtful meaning, by conjecture and guessing, would be to set aside a rule of law, which requires that such intent, in order to avail, shall be clearly intelligible and unequivocal; otherwise, that the superadded words shall be rejected.

That there were two life estates, as suggested by the demandant's counsel, is a circumstance that can have no influence in the construction of the devise. No life estate intervened between Noble Canedy's freehold, and the subsequent limitation; and though the widow might have survived him, yet she did not. If she had, it would have made no difference.

If Noble Canedy took an estate tail, the entail has been barred by the deeds in the case, and a complete title has vested in the tenant. This is not denied by the demandant's counsel.

It may be further suggested for the tenant, that the deeds contain the usual covenants of warranty ; and that if Noble Canedy was but a tenant for life, still, upon the authority of *Archer's case*, (if all the resolutions in that case can be applied to this,) the remainder was destroyed ; or if the ancestor's warranty was binding upon the demandant, then, upon

the principle of collateral warranty, or presumed assets, the demandant's title would be defeated ; the covenant of warranty operating as a bar.    4 Dane Ab. 320.

Barnabas Canedy, one of the grantors in the deeds, was, at the time of their execution, the eldest son, then living, of Noble Canedy, and his heir apparent.    The first born son, however, of Noble Canedy, was the Barnabas Canedy who died in infancy ; and if the words " heir " or " heirs " are to be taken as words of purchase, synonymously with " son," " sons," " child," and " children," then these questions may be suggested :    At what time did the estate vest in the first born son, or in the eldest son living at the death of the tenant for life ?    In him who first came within and answered the description, or in him who answered it at the death of the tenant for life ?    If it vested in the first Barnabas, then did not the demandant take in common with others ?

*Greenleaf*, in reply.    This case turns, as the tenant's coun· sel has said, upon the question, whether the words, " eldest male heir," in the will under discussion, are to be interpreted as words of limitation or words of purchase.    As the testator's intent is to govern, the question is purely one of interpretation.

The rule in *Shelley's case* has always been considered as of more absolute control in its application to deeds than to wi ls.    4 Kent Com. (5th ed.) 216.    In wills, too, the language is to receive its plain and popular exposition, except where the technical phraseology of the law is employed ; in which case only is the strict legal sense to be adopted.

The defence rests not only on a stern application of the rule in *Shelley's case*, but on pressing that rule beyond its just limits.    The original reasons for that rule never existed in this country.    And in England, courts of equity have not held themselves bound by it in regard to equitable estates, though limited in the very words of the rule ; and the courts of law there have adhered to it, as a rule of property, applicable only to cases literally within it.    It is now abrogated by statute, both in England and in Massachusetts, as well as

in many other States of the Union. Surely this court will not feel bound to give it *now* a very extended application. Even before the rule was abrogated in England, it was not held to apply, unless the estate was limited to the same persons, and in the same manner, as it would have gone by descent, if a fee had been expressly given to the first taker. Nor was it applied to cases where the testator annexed words of explanation to the word "heirs," or superadded words, either of explanation or of fresh limitation, grafting a new estate of inheritance upon the heirs to whom he gave the estate. 6 Cruise's Dig. (White's ed.) 291, 295. But, in the present case, the estate is not given to the same persons; and words of explanation and of fresh limitation are superadded.

The testator first gives a life estate to his wife. Then he gives a life estate, by express limitation, to Noble Canedy. "At his decease," it is expressly limited "to his eldest male heir." At whose decease, and to whose male heir? Clearly, Noble Canedy's. This "male heir" was a person in contingency, namely, the person who might happen to answer the description, at the death of Noble Canedy.

Then the testator proceeds to direct, that "at his decease" the estate shall go over. At whose decease? As clearly as before, after the decease of this person whom he had just designated as the eldest male heir. That it was a particular individual whom he meant, is apparent, *first*, from the use of the singular number "heir; " *secondly*, from the word "eldest,". which can apply to but one person; *thirdly*, from the word "male; " and *fourthly*, from the subsequent relative "his," in the singular number, referring back to this person as the last antecedent. The first three of these reasons apply with peculiar force in this country ; because real estates here descend to all the persons related in the same degree, and to females as well as males; rejecting the common law rule of primogeniture and of preference of males to females. On this account, many of the English cases, in which the rule in *Shelley's case* is applied, have no application here, as **they are founded** on a totally different law of descent.

Then follow the testator's words of final superadded limitation, "and to said male heirs and assigns for ever." This is obscurely expressed; but thus much is clear, to wit, that it is a *superadded* limitation. For no limitation in fee precedes it; and it is a limitation in fee. But whether in fee simple or in fee tail, is a question not now before the court; nor is it material to the decision of the present case.

The demandant's interpretation of the devise retains every word, and gives to each its natural and ordinary meaning and force. And such is the course adopted by the courts. They never reject words which have an intelligible meaning, and are neither absurd, nor repugnant to the clear legal intent of the rest of the will. Now the words "after his decease" are intelligible, and not absurd, nor repugnant to any other clearly expressed intent in the will. Allowing them, therefore, their natural meaning and force, and giving the relative its plain grammatical reference, it seems plain that the "eldest male heir" is a designated individual, and not *nomen collectivum.*

The counsel for the tenant was aware that if the words "after his decease" are retained, and taken into the interpretation, the tenant's case is gone. He therefore contended that they should be rejected as surplusage. But this would be doing violence to the will, and in fact making a new one for the testator. These words are plain and sensible, and express nothing contrary to any rule or provision of law, nor to any intention of the testator elsewhere expressed.

Upon authority also, the case is equally clear for the demandant. *Archer's case,* 1 Co. 66, is in substance the same as this; the substance being, that where an estate is limited to one for life, remainder to his next heir male, in the singular number, and to his heirs, (meaning the heirs of the next heir male,) the first taker has but an estate for life. To the same effect is *Luddington* v. *Kime,* 1 Lord Raym. 203, and *Sisson* v. *Seabury,* 1 Sumner, 235.

The case of *Doe* v. *Laming,* 2 Bur. 1100, before cited, is so decisive of the present case, that its force is attempted to be parried by the opinion of Mr. Jarman that it ought not any

longer to be cited. That it conflicted with his views is certain. But it is equally certain that it did not conflict with the views of other jurists at least equally respected. His opinion was first given to the public, in 1827, in his edition of Powell on Devises. But the case of *Doe* v. *Laming* was cited and relied on, in 1820, in *Jesson* v. *Wright*, 2 Bligh, 1; and it was neither contradicted by that case, nor was its soundness questioned by the judges, though they did consider and overrule *Doe* v. *Goff*, 11 East, 668, which stood in the way of their decision. And in 1825, Bayley, J. judicially recognized *Doe* v. *Laming* as good law, in *Doe* v. *Harvey*, 4 Barn. & Cres. 610. It is also found as good text law, in 6 Cruise's Dig. (White's ed.) 272, 293, published in 1835, eight years after it had been questioned by Mr. Jarman. Again, in 1843, in *Greenwood* v. *Rothwell*, 5 Man. & Grang. 628, the case of *Doe* v. *Laming* was cited as good law by Serjeant Byles, and the decision of the court was in accordance with that case. It is also cited as sound law, in 4 Dane Ab. 633, and was so held by Story, J. in *Sisson* v. *Seabury*, and by this court, in *Adams* v. *Cruft*, 14 Pick. 22. To deny its authority now would unsettle the law of real property, without necessity ; and this, too, for the purpose of giving effect to a rule now obsolete, and at variance with the policy of our institutions.

WILDE, J. In this writ of entry, both parties claim title under the will of Barnabas Canedy ; so that the case depends on the construction of his will, by which he devised the demanded premises and other lands and tenements, in the manner following : " I give, grant and convey unto my brother William Canedy's son, Noble Canedy, during his natural life, (that is, after the decease of my said wife Elizabeth Canedy) and at his decease to his eldest male heir, and after his decease and to said male heirs and assigns forever, all and singular my homestead farm in Taunton," and also the demanded premises.

The cause has been ably argued, and numerous cases have been cited and discussed by counsel, as to the rules of

construction in like cases, some of which are apparently conflicting, but which, we think, may be reconciled, so far at least as they bear on the present case, by the application of the general rule that, in the construction of wills, the intention of the testator is to govern, if it may be effectuated by the rules of law.

On the part of the demandant, it has been argued, that by the devise Noble Canedy took an estate for life, and that a contingent remainder in fee was given to his eldest male heir, which vested in the demandant, on the decease of the said Noble, his father; he being then his only male heir. The leading authority in support of this construction is *Archer's case*, 1 Co. 66 *b*. That was a devise to Robert Archer for life, and to his next heir male, and the heirs male of the body of such heir male, and it was held that Robert Archer took only an estate for life. Numerous subsequent cases, in support of the same construction, are cited and reviewed by Story, J. in *Sisson* v. *Seabury*, 1 Sumner, 235.

On the other hand, it was contended by the tenant's counsel, that Noble Canedy, the devisee named in the will, took an estate in tail male, according to the rule, in *Shelley's case*, 1 Co. 93 *b*, that where an estate of freehold is limited to a devisee or grantee, and by the devise or conveyance an estate is limited, either mediately or immediately, to his heirs, in fee simple or in tail, " his heirs " are words of limitation of the estate, and not words of purchase. Numerous cases and authorities have been cited in support of the application of this rule, as the counsel for the tenant contends, to the present case. One of the strongest cases in support of the argument for the tenant is that of *Robinson* v. *Robinson*, 1 Bur. 38. In that case, the devise was as follows : " I bequeath all my real estate to Lancelot Hicks, for and during his natural life, and no longer ; and after his decease to such son as he shall have : and for default of such issue, then I give the same to my cousin," &c. It was held that although the devise to Hicks was of an estate for life, and no longer, yet by necessary implication, to effectuate the manifest general intent of

34 *

the testator, the will was to be so construed as to give to Hicks an estate in tail male ; because the father could not take an estate for life, and the sons successively an estate in tail ; as an estate to the heirs male of the body of L. Hicks is implied, though an estate for life only is given to him. Several cases were decided by Lord Kenyon, on the same ground, namely, on the rule of construction, that where a particular intent is indicated, which is inconsistent with the general intent of the will, the former must yield to the latter. See 2 Jarman on Wills, 318, 319. I do not, however, intend to review the numerous cases cited, which would be a useless labor. For the present case must depend on the intention of the testator, if not inconsistent with the rules of law. And that intention must be ascertained by the language of the will ; taking into consideration all its provisions bearing on the question. Little assistance can be obtained by consulting a multitude of cases.

Now we have no doubt as to the intention of the testator, in the present case. In the first place, it is clear that he intended to give Noble Canedy, the devisee named in the will, a life estate, for this intention is expressly declared. In the next place, he gives the estate, at his decease, to his " eldest male heir ; " and the question is, whether the testator intended, by these words, to enlarge the estate given to Noble Canedy, and thereby to create an estate tail in him, or were the words intended to indicate the person who was to take the estate at the decease of the first devisee ? And we think the latter intention is manifestly indicated. By " the eldest heir," we think the eldest son of the devisee named in the will, who should be living at the decease of the devisee, was intended ; for we cannot suppose that any collateral relative of the devisee was intended. The devisee had, at the time of the devise, no children ; but the remainder was not to vest until the death of the devisee of the life estate ; and the devise over may reasonably be construed as a prospective provision for his eldest son, who should be living at his decease. In this respect, the devise materially differs from that in

*Wild's case,* 6 Co. 16 *b.* In that case, it was decided, that if A. devises his lands to B. and to his children or issue, and he hath no issue at the time of the devise, the same is an estate tail ; for the gift is immediate, and the children or issue could not take, not being *in rerum natura;* and they could not take by way of remainder, for that was not the intent of the testator — the gift being immediate. In the present devise, the gift to the eldest heir of the first devisee was to take effect, and we think did take effect, by way of remainder, which was contingent and did not vest until the death of the devisee, Noble Canedy ; and we are of opinion that the demandant took an estate in tail male. It is true that the intention of the testator is not accurately expressed ; but we think there can be no reasonable doubt of the meaning. It is clear that the eldest son or heir of Noble Canedy was to take a remainder. Then follow the words, " and, after his decease, to said male heirs and assigns forever." We think that by these words the intention is indicated, that after the decease of the eldest son of Noble Canedy, the estate given to him was to descend to his eldest son, and so from eldest son to eldest son, in perpetual succession. The words " said male heirs " were intended to designate the eldest male heirs who should take in succession after the death of the first remainderman. These words, therefore, must be construed as words of limitation of the estate in remainder, and not as enlarging the life estate expressly given to Noble Canedy ; and thus all the parts of the will will be consistent. The rule in *Shelley's case,* accordingly, does not apply to the estate of Noble Canedy, the devisee first named in the will, and he only took an estate for life.

The rule of construction, on this point, is correctly stated by Jarman, and is fully supported by the authorities. " Though a devise to the next heir male, simply following a devise to the ancestor for life, does not confer on the heir an estate by purchase, (the words being construed as words of limitation,) yet if the testator has ingrafted words of limitation on the devise to the next heir male, he is considered

as indicating an intention to use the term 'heir' as a mere *descriptio personæ ;* the superadded words of limitation having the effect of converting the expression 'next heir male' into words of purchase." 2 Jarman on Wills, 234. This we consider a very sound rule of construction, and it is decisive in the present case. No one would doubt, that if the devise had been to Noble Canedy for life, and at his decease to his eldest son, and the heirs of his body, the latter would take an estate tail ; and we think the words in the will, though not expressed with perfect accuracy, must have the same effect.                                     *Tenant defaulted.*